IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**HOWARD MORELAND,**

    **Petitioner,**

v.                                                    No. CIV 97-812 JP/JHG

**PATRICIA MADRID, Attorney**
**General of the State of New Mexico**

    **Respondent.**

## MEMORANDUM OPINION AND ORDER

On June 4, 1999, United States Magistrate Judge Joe H. Galvan entered Magistrate Judge's Proposed Findings and Recommended Disposition, (Doc. No. 40), which recommends denying the Petitioner's Petition for a Writ of Habeas Corpus, (Doc. No. 1), filed June 13, 1997, and Motion for an Evidentiary Hearing, (Doc. No. 29), filed February 19, 1999. On June 18, 1999, Petitioner filed Petitioner's Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition, (Doc. No. 43). The Court has made a *de novo* determination of those portions of the Magistrate Judge's Proposed Findings and Recommended Disposition to which Plaintiff objected and finds the objections to be without merit. The Court further finds the Proposed Findings and Recommended Disposition, as specifically supplemented below, should be adopted.

### The Applicability of the AEDPA

Petitioner objects to the Magistrate Judge's conclusion that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to his June 1997 habeas petition.

In his recommended findings, the Magistrate Judge acknowledged that "a second federal habeas petition filed subsequent to the dismissal of a prior petition without prejudice for failure to exhaust state remedies is not a second or successive application within the meaning of 28 U.S.C. § 2244(b)(1)," but nevertheless concluded that Petitioner's June 1997 petition was "subject to the provisions of the AEDPA because it was filed after April 24, 1996." Recommended Findings at 3-4. The Magistrate Judge noted that in *Whaley v. Thompson*, 22 F. Supp. 2d 1146, 1155 (D.Or. 1998), *recognizing implicit overruling on other grounds, Charles v. Baldwin*, No. CV-97-380-ST, 1999 WL 375591 (D.Or. Apr. 14, 1999), the court rejected an argument similar to Petitioner's.

Petitioner essentially argues that the AEDPA does not apply to the June 1997 petition because it relates back to the first petition, which was filed on January 27, 1993, before the AEDPA was enacted. Petitioner contends that the Magistrate Judge did not adequately explain his finding that the AEDPA applies to Petitioner's June 1997 petition.

In *Whaley*, the district court rejected "petitioner's contention that the AEDPA is inapplicable to this case because the instant petition is merely a 'continuation' of an earlier petition that petitioner filed on March 18, 1992," which was dismissed without prejudice for failure to exhaust state court remedies. *Whaley*, 22 F. Supp. 2d at 1155. The court also stated, "[a]lthough the prior petition does not count for purposes of the rule barring successive § 2254 petitions, *In re Turner*, 101 F.3d 1323 (9th Cir. 1996), that does not mean the present petition relates back to the one filed five years earlier." *Id*. Although Petitioner dismisses the Magistrate Judge's reliance on *Whaley* by stating that "[t]he *Whaley* court states its position in cursory fashion without any reasoning to support its conclusion," (objections at 3, n. 2), other courts

have agreed with *Whaley*.

In an unpublished case, the Sixth Circuit held that the AEDPA applied to a petition filed after April 24, 1996, even though petitioner's previous petition was dismissed in 1993 for failure to exhaust state court remedies. *See Fee v. Borgert*, No. 98-1875, 1999 WL 638525, at *2 (6th Cir. August 11, 1999). The court also stated that "[i]t is irrelevant that, for 28 U.S.C.A. § 2244 (West 1998) purposes, a previously-dismissed petition for failure to exhaust state court remedies is not considered a 'first' petition which would subject any subsequent petitions to the requirement that the petitioner obtain an order authorizing such subsequent petitions, since Fee has failed to offer any evidence that such subsequently-filed petitions would not be subject to the provisions of the AEDPA if filed after April 24, 1996." *Id.* (citation omitted).

In an unpublished opinion from the district of Pennsylvania, the court also rejected the petitioner's argument that the AEDPA should not apply to his pending petition because it related back to two petitions he had filed before the AEDPA was enacted, both of which were dismissed without prejudice for failure to exhaust state court remedies. *See Jermyn v. Horn*, CV-97-634, 1998 WL 754567, at * 5 (M.D.Pa. Oct. 27, 1998). Because these cases are consistent with the Magistrate Judge's proposed findings, and because the Court concurs in their reasoning, Petitioner's objection should be overruled.

**Standard of Review under § 2254(d)(1)**

Petitioner objects to the Magistrate Judge's finding that the appropriate standard of review under § 2254(d)(1) is the "reasonable jurist" standard advanced by the Fourth Circuit in *Sexton v. French*, 163 F.3d 874, 880 (4th Cir. 1998). According to Petitioner, the appropriate standard is that propounded by the First Circuit in *O'Brien v. DuBois*, 145 F.3d 16 (1st Cir. 1998) and by the

Third Circuit in *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3rd Cir.), *cert. denied*, — U.S. — ,120 S.Ct. 73 (1999). Petitioner also appears to object to the Magistrate Judge's characterization of the Fourth Circuit's approach to § 2254(d)(1) as highly deferential. Finally, Petitioner faults the Magistrate Judge for failing to appreciate the differences among the circuits' approaches to interpreting § 2254(d)(1).

The AEDPA states in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was *contrary to*, or *involved an unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

As the Magistrate Judge noted, the circuits are divided regarding the appropriate standard of review under § 2254(d)(1). "The disagreement is not about whether the AEDPA requires a high degree of deference to the state court's judgment; rather, it is about how to gauge the degree of deference necessary." *Nevers v. Killinger*, 169 F.3d 352, 361 (6th Cir.), *cert. denied*, — U.S. — , 119 S.Ct. 2340 (1999). The United States Supreme Court has granted certiorari in a case to review the Fourth Circuit's interpretation of the standards. *See Williams v. Taylor*, — U.S. — , 119 S.Ct. 1355, 143 L.Ed.2d 516 (1999); *see also* — U.S. — , 119 S.Ct. 1355, 143 L.Ed.2d 516, 67 U.S.L.W. 3608 (Apr. 6, 1999) (listing issues presented).

The Fifth, Seventh, and Eleventh Circuits have taken similar approaches to their

interpretation of the standard of review set forth in § 2254(d)(1).  *See, e.g., Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997); *Lindh v. Murphy*, 96 F.3d 856 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997); *Neelley v. Nagle*, 138 F.3d 917 (11th Cir. 1998), *cert. denied*, — U.S. — , 119 S.Ct. 811 (1999).  These circuits essentially impose a bifurcated standard that interprets the "contrary to" clause as applicable to questions of pure law and the "unreasonable application" clause as applicable to mixed questions of law and fact.

The First Circuit has rejected the bifurcated standard, *see O'Brien v. DuBois*, 145 F.3d 16 (1st Cir. 1998), in favor of the following approach:

> A federal habeas court charged to weigh a state court decision must undertake an independent two-step analysis of that decision.  First, the habeas court asks whether the Supreme Court has prescribed a rule that governs the petitioner's claim.  If so, the habeas court gauges whether the state court decision is "contrary to" the governing rule. In the absence of a governing rule, the "contrary to" clause drops from the equation and the habeas court takes the second step.  At this stage, the habeas court determines whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an "unreasonable application" of Supreme Court precedent.

*Id*. at 24.  The Third Circuit's approach is closely related to that of the First Circuit.  *See Matteo v. Superintendent*, 171 F.3d 877, 885-91 (3rd Cir. 1999), *petition for cert. filed*, 68 U.S.L.W. 3008 (U.S. June 22, 1999) (No. 98-2050).

The Fourth Circuit's approach has been characterized by the Sixth Circuit as "similar to that of the Fifth, Seventh, and Eleventh Circuits," *Nevers*, 129 F.3d at 358, and characterized by a commentator as similar to that of the First Circuit.  *See* James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 30.2c, at 1265 (3rd ed. 1998). The Fourth

Circuit has stated:

> A state court decision is "contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" if: (1) the state court decision is in "square conflict" with Supreme Court precedent which is controlling as to law and fact; or (2) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green* [*v. French*, 143 F.3d 865, 870 (4th Cir. 1998), *cert. denied*, — U.S. —, 119 S.Ct. 844 (1999)]. "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id*.

*Sexton v. French*, 163 F.3d 874, 880-81 (4th Cir. 1998), *cert. denied*, — U.S. —, 120 S.Ct. 139 (1999).

The Sixth Circuit has apparently avoided adopting any specific approach by reasoning that the differences among the various circuit standards would not effect the result of each case before it. *See Nevers*, 169 F.3d at 361; *Hapster v. Ohio*, 128 F.3d 322 (6th Cir. 1997), *cert. denied*, — U.S. —, 118 S.Ct. 1044 (1998).

Like the Sixth Circuit, the Tenth Circuit has declined to adopt in a published opinion an approach to the interpretation of § 2254(d)(1) and has stated that "[u]nder any possible interpretation of the standards, the outcome of this appeal will be the same." *Bryson v. Ward*, 187 F.3d 1193, 1199 n. 3 (10th Cir. 1999).[1] In an unpublished Tenth Circuit opinion, however, the

---

[1] Petitioner argues that the only Tenth Circuit precedent regarding the proper interpretation of § 2254 favors the interpretation advanced by the First and Third Circuits. *See* Petitioner's Objections at 9 (citing *Miller v. Champion*, 161 F.3d 1249, 1254 (10th Cir. 1998)). The Court does not agree that *Miller* controls this case because *Miller* does not explicitly address how to interpret the statutory language of § 2254(d)(1). The Tenth Circuit has made it clear in *Bryson* that it has not adopted any specific approach to the proper interpretation of § 2254(d)(1).

Tenth Circuit seemed to adopt the Fourth Circuit's approach in *Sexton* to the proper interpretation of § 2254(d)(1). *See Roberts v. Ward*, No. 98-6066, 1999 WL 162751, at * 3 (10th Cir. March 25, 1999), *petition for cert. filed*, No. 99-6468 (Oct. 4, 1999). In *Roberts* the Tenth Circuit stated:

> A state court decision is "contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" if: (1) the state court decision is in square conflict with Supreme Court precedent which is controlling on law and fact; or (2) if no such controlling decision exists, the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant Supreme Court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts. In short, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that *reasonable jurists would all agree is unreasonable*. *Sexton v. French*, 163 F.3d 874, 880 (4th Cir. 1998).

*Id.* at * 3 (full citations omitted) (emphasis added).

In the absence of more specific guidance from the Tenth Circuit, the Magistrate Judge did not err in finding that the appropriate standard of review is the "reasonable jurist" standard advanced by the Fourth Circuit in *Sexton* and by the Tenth Circuit in its unpublished opinion in *Roberts*. Although the Magistrate Judge did not elaborate on the differences among the circuits' interpretations of § 2254(d)(1), the Court is confident that the Magistrate Judge did not err in his use of the "reasonable jurist" standard.

Petitioner has also failed to explain how a different standard of review would affect the outcome of the Magistrate Judge's proposed findings regarding individual issues. "Quite simply, the 'AEDPA increases the deference to be paid by the federal courts to the state court's factual

findings and legal determinations.'" *Roberts*, 1999 WL 162751, at * 3 (quoting *Houchin v. Zavars*, 107 F.3d 1465, 1470 (10th Cir. 1997)). Thus, "[u]nder any possible interpretation of the standards, the outcome of this appeal would be the same." *Moore v. Gibson*, No. 98-6004, 98-60100, 1999 WL 765893, at * 8 (10th Cir. Sep. 28, 1999).

### **Evidentiary Hearing on Petitioner's Claim of Prosecutorial Misconduct**

Petitioner objects to the Magistrate Judge's finding that Petitioner is not entitled to an evidentiary hearing on his claim of prosecutorial misconduct, which is based on the prosecutor's alleged use of perjured testimony to secure an indictment charging Petitioner with solicitation to commit murder. The solicitation to commit murder charge was dismissed under a plea agreement.

In his Memorandum Brief in Support of Petition for Writ of Habeas Corpus, Petitioner argued that *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974) and *United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983) supported his claim that his due process rights were violated by the prosecutor's use of perjured testimony. Petitioner argued that if the solicitation of murder charge was based on perjured testimony, then Petitioner did not receive any benefit from the plea bargain. Petitioner also cited to five affidavits to support his claim of prosecutorial misconduct.

In her Response Brief, Respondent contended that this issue is moot. Respondent argued that because the solicitation to commit murder charge was dismissed pursuant to a plea agreement, Petitioner was not convicted of this charge and therefore is not "a person in custody pursuant to the judgment of a State Court" under 28 U.S.C. § 2254(a). According to Respondent, it is unclear whether *Basurto* and *Hogan* remain good law. Respondent also contends that Petitioner is not entitled to relief because he has not alleged facts to support his

claim.

In his recommended finding, the Magistrate Judge observed that the charge of solicitation to commit murder was dismissed pursuant to the plea bargain and that the plea was found to be knowing and voluntary. The Magistrate Judge found that no evidentiary hearing was required on this issue because Petitioner had failed to allege facts which, if proven, would entitle him to relief.

Petitioner has not cited any cases holding that he is "in custody" for the purposes of 28 U.S.C. § 2254(a) on the solicitation to commit murder charge. Even assuming that he is "in custody" under § 2254(a), and further assuming, *arguendo*, that *Basurto* and *Hogan* are good law and control this case, the court concurs with the Magistrate Judge's proposed finding that Petitioner has failed to allege facts which, if proven, would entitle him to relief

In *Basurto*, the Ninth Circuit held that the "Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the *government knows* is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." *Basurto*, 497 F.2d 781, 785 (emphasis added). In *Hogan*, the Second Circuit stated, "[d]ue process considerations prohibit the government from obtaining an indictment based on *known* perjured testimony." *Hogan*, 712 F.2d at 759 (emphasis added). Under these cases, due process is implicated only when the government obtain an indictment with testimony that the government *knows* to be perjured.

Petitioner's Memorandum Brief in Support of Petition for Writ of Habeas Corpus does not assert that the prosecutor obtained the indictment of solicitation to commit murder by

knowingly presenting perjured testimony to the grand jury. Although Petitioner cites[2] to the affidavits of Danny Dunnam, Kurt Olson, Thomas Dodson, Thomas Curry, and Betty T. Moreland, nothing in either Mr. Curry's or Dr. Olson's affidavit remotely supports Petitioner's claim of prosecutorial misconduct. *See* Olson Affidavit, attached to petition as Ex. $H_1$-$H_{10}$; Curry Affidavit, attached to petition as Ex. J.

Two of the three affidavits of Petitioner's mother, Betty T. Moreland, at least refer to the alleged prosecutorial misconduct. The March 3, 1994 affidavit states in relevant part:

> 9.   He [Petitioner] informed me at that time that he had been falsely accused and was able to stand trial for allegedly hiring Wayne Hall, Jr. to murder both the judge and the prosecutor in my son's previously alleged causes.

March 3, 1994 Affidavit of Betty T. Moreland, Ex. $Z_1$ to petition. Ms. Moreland's second affidavit states in relevant part:

> 3.   Howard stated . . . that they [the jailers] had coerced a number of other inmates similarly housed with Howard, into preparing false statements against him, in order to aid the District Attorney's Office in furthering their prosecutory efforts against him.

May 14, 1994 Affidavit of Betty T. Moreland, Ex. $Z_2$ to petition.

Although Ms. Moreland's affidavits refer to the alleged prosecutorial misconduct, both references contain hearsay statements. Neither statement alleges that any perjured testimony was presented to the grand jury or that the prosecutor knew that any perjured testimony was used to obtain the indictment charging Petitioner with solicitation to commit murder.

---

[2] Petitioner failed to identify the affidavits by their exhibit numbers or to specifically identify the page numbers or paragraph numbers of each affidavit that would support his prosecutorial misconduct claim.

Mr. Dodson's affidavit states that he was threatened by prison guards to create a statement "that Moreland made statements about how he planned to kill the D.A.s presiding over his case; none of these statements I put on paper were true." Dodson Affidavit, Ex. I to petition. Even if Mr. Dodson's statement is true, however, he does not state that his false statement was presented to the grand jury or that the prosecutor knew that any perjured testimony was used to obtain the indictment charging Petitioner with solicitation to commit murder.

Mr. Dunnam's affidavit states that two prison guards coerced him into making a written statement that Petitioner "had hired a friend of his to come to New Mexico from Georgia, (Moreland's home state) and to kill: (a) the judge presiding over Moreland's criminal case, (b) the Deputy District Attorney prosecuting Moreland, and finally, (c) the girlfriend of Moreland purported to testify against him." Dunnam Affidavit at ¶ 12, Ex. G to petition. Mr. Dunnam also states that the same prison guards coerced other prisoners into providing "similar false-statements to be used with the aid of the District Attorney's Office . . . ." *Id*. at ¶ 13. Neither of these statements allege that the prosecutor presented perjured testimony to the grand jury or that the prosecutor knew that any perjured testimony was used to obtain the indictment charging Petitioner with solicitation to commit murder.

After carefully reviewing the record, the Court is satisfied that, even if Petitioner is entitled to bring this claim under § 2254, no evidentiary hearing is required on Petitioner's claim of prosecutorial misconduct because Petitioner has failed to allege facts which, if proven, would entitle him to relief.

The Court has also reviewed Petitioner's remaining objections to the Magistrate Judge's proposed findings and finds them without merit.

**IT IS THEREFORE ORDERED** that:

1.) the Proposed Findings and Recommended Disposition of the United States Magistrate Judge are adopted by this Court and:

   a..) the Petition for a Writ of Habeas Corpus (Doc. No. 1) filed June 13, 1997, is **DENIED** and Petitioner's federal habeas corpus Petition is **DISMISSED**; and

   b.) the Motion for Evidentiary Hearing, (Doc. No. 29), filed February 19, 1999, is **DENIED**.

_/s/ James A. Parker_
**UNITED STATES DISTRICT JUDGE**